■ CHRISTINE KROMER, Respondent, v MICHAEL KROMER, Appellant.—In an action to recover damages for breach of a separation agreement, the defendant appeals, as limited by his brief, from so much of a resettled judgment of the Supreme Court, Queens County (Zelman, J.), entered June 14, 1989, as, after a nonjury trial, awarded the plaintiff the sum of $887.43 to cover one-half of certain medical expenses of their minor children and dismissed the defendant's counterclaim to recover alleged erroneous overpayments of child support on the ground that it "was not brought timely".

Ordered that the resettled judgment is reversed insofar as appealed from, on the law, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for further proceedings in accordance herewith, and entry of an appropriate amended judgment.

It is well settled that a separation agreement is a contract subject to principles of contract interpretation (see, Rainbow v Swisher, 72 NY2d 106, 109; Matter of Meccico v Meccico, 76 NY2d 822, 824), and that where the intention of the parties is clearly and unambiguously set forth, their intent "must be gleaned from within the four corners of the instrument, and not from extrinsic evidence" (Rainbow v Swisher, supra, at 109; Matter of Meccico v Meccico, supra; Slatt v Slatt, 64 NY2d 966, 967; Bono v Bono, 157 AD2d 763, 764; Howard v Howard, 120 AD2d 567, 568).

In the instant case, the plaintiff alleged, inter alia, that the defendant had breached the terms of their written separation agreement by failing to reimburse her for medical expenses incurred by the children which were not covered by the medical insurance provided by the defendant. Paragraph 10 (c) of the parties' agreement simply provides that the defendant's obligation in this regard is to pay for and keep in full force and effect Blue Cross and other medical and dental policies covering the children. Accordingly, it was error to allow the plaintiff to introduce parol evidence with respect to this clause, and it was also error to award her a money judgment on an item for which the defendant was not obligated to pay pursuant to the terms of the separation agreement.

The court also erred in dismissing the defendant's counterclaim to recover certain alleged overpayments of child support on the ground that it was "not brought timely". Recovery of any overpayments made during the six-year period prior to the date the counterclaim was interposed is not barred by the Statute of Limitations *(see, Jacobs v Patterson,* 112 AD2d 402). Further, the principles of laches or estoppel cannot be applied here. It is settled that laches and estoppel are affirmative defenses which must be pleaded *(see, Markwicka v Davis,* 64 NY2d 38, 42; *Surlak v Surlak,* 95 AD2d 371, 383; *Glenesk v Guidance Realty Corp.,* 36 AD2d 852). A failure to plead those affirmative defenses may be remedied by amendment of the answer *(see, Surlak v Surlak, supra).* Contrary to the finding of our dissenting colleague, in the instant case, not only did the plaintiff fail to plead, in her reply to the counterclaim, the affirmative defenses, but she also failed to seek to amend her pleadings. While the plaintiff orally moved to amend her pleadings to conform to the proof at the trial, that application was made at the end of the plaintiff's direct examination and solely with respect to bringing up to date the amount of tuition payments for parochial school demanded in the complaint.

Moreover, despite the feeling of outrage expressed by our dissenting colleague over what is perceived to be a grave injustice in requiring the plaintiff to reimburse the defendant for the overpayments, it should be pointed out that we have not decided the merits of that issue. Our decision herein is purely a procedural one not involving the merits, based in part upon the plaintiff's failure to raise the affirmative defenses of laches or estoppel in her pleadings.

Accordingly, this case must be remitted to the Supreme Court, Queens County, for a new hearing on the merits of the defendant's counterclaim, to determine whether he is entitled to a recoupment of overpayments and, if so, to determine the amount thereof and the method of payment *(see, Jacobs v Patterson,* 112 AD2d 402, *supra; Fry v Fry,* 279 App Div 122, *affd* 304 NY 889). Kunzeman, J. P., Balletta and O'Brien, JJ., concur.

Miller, J., concurs in part and dissents in part and votes to modify the order appealed from by deleting the provision thereof which awarded the plaintiff the principal sum of $887.43, and as so modified, to affirm the resettled judgment insofar as appealed from, without costs or disbursements, with the following memorandum: I concur with my colleagues' conclusion that the Supreme Court erred in interpreting the

parties' separation agreement so as to require the defendant to pay for the children's unreimbursed medical expenses, since the agreement only provides for payment for the children's Blue Cross and other identified insurance coverage. However, I dissent from their further conclusion that the Supreme Court erred in dismissing the defendant's counterclaim for alleged overpayments of child support of over $3,000 made in the course of a three-and-one-half-year period. By finding the doctrine of equitable estoppel or laches inapplicable, the majority has determined not merely the procedural aspects of this case, but its ultimate outcome. Absent those defenses, sums overpaid by the defendant due to his error three and one-half years ago or earlier, must be repaid by the plaintiff, notwithstanding that she has expended those sums on the children. My dissent stems from my conviction that the doctrine of equitable estoppel merits application under these circumstances. While the majority correctly states that the defendant's claim is not barred by the Statute of Limitations, if ever the doctrine of equitable estoppel merits application, the circumstances herein are manifestly compelling.

The defendant testified that he misinterpreted the terms of the parties' separation agreement which required him to increase child support in proportion to his increase in salary, and when his maintenance obligations terminated, to increase his basic child support obligation from $125 to $150 per week, per child. As a result of his alleged misreading of the separation agreement (prepared by his attorney) he claims he made overpayments of $3,055 of child support over a period of three and one-half years. The record is vague in regard to the time when he claims to have discovered his alleged error. In any event, there is no evidence that he sought to recover these sums prior to the wife's· commencement of the instant action for reimbursement for expenditures she made for the children's medical and educational expenses. Indeed, we may reasonably infer from the record that but for the plaintiff's action seeking reimbursement, the defendant would not have sought to recover these alleged overpayments by way of a counterclaim, which appears to be no more than a common knee-jerk reaction, a prototypical tit-for-tat response to an initial law suit.

The plaintiff contends that these alleged "overpayments" were made voluntarily as gifts, that the husband never intended to recoup them, and that, in any event, if they were made in error, she would be unjustly prejudiced if required to repay them after expending these sums (and more) on the

children's needs. In my view, the plaintiff's claim of prejudice is strongly persuasive, given the court's finding that the plaintiff "worked several jobs and heavily indebted herself to pay for the children's health and educational needs", and the parties' uncontroverted testimony that at the time of trial the plaintiff earned $23,000 while the defendant earned $63,000. Moreover, of more far-reaching concern to me over and above the clear inequities resulting to the plaintiff in this case, is the precedent seemingly established herein, that overpayment of child support due to an error on the part of the payor may be recouped from the payee within any period permitted by the Statute of Limitations, notwithstanding the payee's justifiable reliance on entitlement to the sums received.

As egregious as the result is in this case, the effect of this precedent could be Draconian were the sums erroneously paid in far greater amounts than the mere $3,055 at stake in this case. Nor are these unfortunate consequences unavoidable. The doctrine of equitable estoppel has been invoked to avoid just such obvious inequities.

The essence of the doctrine was expressed by the Supreme Court of the United States in *Insurance Co. v Wilkinson* (80 US 222, 233): "The principle is that where one party has * * * induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage". It is not necessary that actual fraud be shown in order to establish equitable estoppel. It is only necessary to show that the person estopped by his conduct misled another to his prejudice *(see, Leather Mfrs'. Bank v Morgan,* 117 US 96; *Rothschild v Title Guar. & Trust Co.,* 204 NY 458). Indeed, it has been held that estoppel may arise from the culpable negligence by which another has been misled *(see, Unity Banking Co. v Bettman,* 217 US 127; *Crary v Dye,* 208 US 515).

In order to establish equitable estoppel, the following factors must be shown with respect to the party estopped: (1) conduct which amounts to false representation or concealment of material facts, (2) the intention or reasonable expectation that such conduct will be relied upon by the other party, and (3) knowledge, actual or constructive, of the real facts. The party seeking estoppel must show (1) reliance on the other's conduct, and (2) that in reliance thereon, he or she changed position to his or her prejudice *(Gratton v Dido Realty Co.,* 89 Misc 2d 401, *affd* 63 AD2d 959; *see also, Buffum v Barceloux Co.,* 289 US 227; *Werking v Amity Estates,* 2 NY2d 43; *Rothschild v*

*Title Guar. & Trust Co., supra; Muller v Pondir,* 55 NY 325). Each of these elements is present in this case, and, therefore, the defendant should be estopped from recovering his overpayments of child support.

As for the first element, by erroneously paying $25 per week in additional child support, the defendant effectively misrepresented his actual support obligations. He intended or reasonably expected that the plaintiff would use those funds for the children and thereby rely upon his conduct. Moreover, he had at least constructive knowledge of the provisions of the separation agreement which he not only signed but which was drafted by his counsel. As to the plaintiff who seeks to invoke estoppel, the court found that she relied on the overpayments, and in fact incurred substantial debt over and above the amounts received from the defendant for the support of the parties' children. Clearly, the defendant's acts were of such a character as to cause the plaintiff prejudice since requiring her to return the money will further weaken her already fragile economic circumstances.

The equities in this case are similar to those in cases in which restitution for overpayments has been denied where it would be inequitable or inexpedient *(see, Lincoln Natl. Life Ins. Co. v Brown Schools,* 757 SW2d 411 [Tex]; *USF&G Co. v Newell,* 505 So 2d 284) or if it would violate standards of equity and good conscience *(Duvall v Director of Labor,* Ark Ct App, June 20, 1990; *Vaughn v Everett,* 5 Ark App 149, 633 SW2d 401; *Gilles v Department of Human Resources,* 11 Cal 3d 313, 521 P2d 110). Moreover, in addition to the plaintiff's reliance on the payments, the relative financial position of the two parties compounds these equitable considerations, as the defendant's earning power is approximately three times that of the plaintiff *(see, Coppo v Coppo,* 140 NYS2d 603).

Nor should the failure of the plaintiff to plead equitable estoppel as an affirmative defense prove fatal in this case, since the defendant can claim no surprise from the application of this doctrine *(see,* CPLR 3018; *Carlson v Travelers Ins. Co.,* 35 AD2d 351). Moreover, the plaintiff moved orally to amend her pleadings to conform to the proof, and, in any event, the court may appropriately amend the pleadings to conform to the proof where, as here, evidence has been adduced as to all relevant issues *(see,* CPLR 3025 [c]; *Dampskibsselskabet Torm A/S v Thomas Paper Co.,* 26 AD2d 347). In this case, evidence has been adduced as to the defendant's overpayment, the plaintiff's expenditures on behalf of the children, and the parties' respective income.

Under these circumstances I find it clearly inequitable to require the plaintiff to return overpayments she received. I would therefore deny the defendant reimbursement of sums he paid as a result of his alleged misinterpretation of the separation agreement drafted by his counsel, upon which this plaintiff and children justifiably relied.