*439 OPINION OF THE COURT
Andrew K. Brotmann, J.
I. Issue Presented
What is a “pharmaceutical”? That is the question this court has been asked to answer in the context of a divorce decree between the parties herein. The underlying facts of this matter are basically uncontested. On or about April 3, 1990, the parties entered into a separation agreement (a copy of the separation agreement was introduced as plaintiff’s exhibit 2). A judgment of divorce was subsequently entered by the Honorable Aldo A. Nastasi (Westchester County Sup Ct, Index No. 19578/ 85) on or about June 5, 1990 which specifically incorporated by reference the separation agreement, the terms of which were to survive the judgment (a copy of the judgment was introduced as plaintiff’s exhibit 1). Paragraph “Tenth” of the separation agreement states that “the husband will pay for the wife’s uninsured pharmaceutical expenses up to a maximum of two thousand four hundred ($2,400.00) dollars per year” (emphasis added). Plaintiff has commenced the instant matter seeking reimbursement from defendant for what plaintiff deems to be “pharmaceutical expenses.”
II. Jurisdiction
To begin with, although raised by neither side, we must first address the threshold issue of whether or not this court has jurisdiction to hear this matter. A city court does not have subject matter jurisdiction over the enforcement of a divorce decree. However, where the provisions of a separation agreement survive the final judgment of divorce and were not merged into the final judgment, a city court does have jurisdiction to adjudicate the claim. (See Oechslin v Oechslin, 141 Misc 2d 1047 [Nassau Dist Ct 1988].) In Milman v Milman (131 AD2d 826 [2d Dept 1987]), the plaintiff brought a civil action in the Civil Court of the City of New York, Kings County, to recover arrears under a separation agreement which was incorporated, but not merged, into the judgment of divorce. The Court there held that the action is “one to recover damages for breach of contract, i.e., the separation agreement which creates obligations separate and distinct from the divorce judgment” and therefore the action was properly in the Civil Court. (Milman v Milman, 131 AD2d 826, 827.) It is well settled that a separation agreement is a contract subject to the principles of contract interpretation. (Kromer v Kromer, 177 *440 AD2d 472 [2d Dept 1991].) As stated above, Justice Nastasi’s judgment specifically indicated that the separation agreement “shall not be merged in this Judgment.” Thus, this court has jurisdiction to hear and render a decision on the issues presented.
III. Facts
Plaintiff testified credibly on her own behalf that she suffers from a number of ailments including spinal stenosis. As part of her treatments, she is prescribed certain medications including milk of magnesia, vitamin C, cod liver oil and Tylenol. Her doctor gives her a prescription for these items and she has the prescription filled at a local pharmacy.[1] By obtaining her medications in this manner, she is able to do so at a substantial discount. Defendant does not contest either that she obtained the prescriptions or that they were medically necessary. In fact, defendant does not contest that he is responsible for “pharmaceutical expenses.” The crux of defendant’s defense is that the foregoing items were not pharmaceutical expenses as such term was intended.
IV. Discussion
A. Applicable Case Law
There is scant case law setting forth an applicable definition of “pharmaceutical.” To be sure, the only case cited by defendant is an unreported federal case out of the District of Delaware, Novo Nordisk A/S v Eli Lilly & Co. (1999 WL 1094213, 1999 US Dist LEXIS 18690 [Del Dist Ct, Nov. 18, 1999, Schwartz, J.]). Hardly precedential in this jurisdiction. Stedman’s Medical Dictionary (26th ed) simply defines pharmaceutical as “relating to pharmacy or to pharmaceutics” and pharmaceutics as “the science of pharmaceutical systems, i.e. preparations, dosage forms, etc.” Similarly, the Physician’s Desk Reference Medical Dictionary (2d ed) defines pharmaceutics as “the science of preparing and dispensing drugs.”[2]
*441 B. Admissibility of Parol Evidence
Where the terms of a contract or agreement are clear and unambiguous, there is no need to consider parol evidence to determine the plain meaning of the writing. (See Azrtak-Hamway Intl. v Home Ins. Co., 170 AD2d 236 [1st Dept 1991].) Specifically, courts have held that parol evidence is not permitted if the language of a separation agreement is unambiguous. (See Shea v McFadden, 227 AD2d 543 [2d Dept 1996]; see also, Riggs v Riggs, 205 AD2d 864 [3d Dept 1994].) Therefore, parol evidence was not permitted where husband agreed to pay for all child’s educational expenses beyond high school since such term was unambiguous. (Allyn v Allyn, 163 AD2d 665 [3d Dept 1990].) Similarly, the ex-wife was not allowed to introduce parol evidence to interpret the parties’ intentions so as to require the ex-husband to pay for a child’s unreimbursed medical expenses where the separation agreement only provided for the child’s insurance coverage. (See Kromer, supra.)
Conversely, where the terms of an agreement are ambiguous, the introduction of parol evidence is admissible to explain the meaning which has been given to certain words and/or terms. (Prince, Richardson on Evidence § 11-403 [Farrell 11th ed] [Parol Evidence to Show Custom or Usage].) In Dube v Horowitz (258 AD2d 724 [3d Dept 1999]), parol evidence was permitted to determine the intentions of the parties as to the meaning of the term “wages” in the separation agreement.
In the instant matter, the plain meaning doctrine is inapplicable since it is the determination of the court that the term “pharmaceutical expense” is ambiguous. Therefore, extrinsic evidence is admissible to ascertain the intent of the parties and the meaning of the term as set forth in the separation agreement.
It is plaintiffs contention that she is entitled to be reimbursed for any item purchased in a pharmacy. Clearly, this interpretation is overbroad as nowadays many pharmacies sell a wide variety of items from animal crackers to zippers. Defendant testified credibly on his own behalf and argued that it was the intention of the parties at the time of the execution of the separation agreement that plaintiff was entitled to be reimbursed only for prescription medications. This definition, however, is subject to wide interpretation. In the instant matter, for example, plaintiff had obtained prescriptions for such items as Tylenol, castor oil and calcium pills, items which could *442 be purchased without a prescription.[3] Additionally, defendant’s proposed definition leaves unanswered the question of how to address products which start out as only available by prescription but are later deregulated and allowed to be sold over-the-counter.[4] Similarly, there are certain medications for which a prescription is needed but which are also available over-the-counter at a reduced strength.[5]
V. Conclusion
It is the opinion of this court that the only logical definition of “pharmaceutical expenses” as such term is used in the separation agreement, and the one surely intended by the parties, is for those drugs and medicines which are only available by prescription at a pharmacy. This definition also includes certain peripheral items necessary to administer said medicines such as hypodermic syringes but does not, however, include medical equipment and other items only available by prescription such as eyeglasses, crutches and wheelchairs, hearing aids and dental work. At such time as such medications become available over-the-counter, they would no longer fit in this definition. Plaintiff cannot circumvent this definition by merely having a prescription issued to obtain certain over-the-counter medications (Tylenol and castor oil). These items do not fall within the definition.
Based on the foregoing, it is the decision of this court that plaintiff is entitled to certain reimbursement from defendant pursuant to the separation agreement for her pharmaceutical expenses as such term has now been defined. Specifically, plaintiff is entitled to reimbursement in the amount of $128.79. This is the amount plaintiff has proven she has expended[6] for medications only available by prescription. Plaintiff is not entitled to reimbursement for prescription eyeglasses or other medications otherwise available over-the-counter. Judgment shall enter in favor of plaintiff as against defendant in the *443 amount of $128.79 together with costs and interest thereon from the date hereof.

. Plaintiff submitted numerous exhibits to support her claim for damages including copies of prescriptions, pharmacy receipts, paid (and unpaid) bills, account statements and lists of her medications.

. Black’s Law Dictionary (1303 [rev 4th ed]) is similarly unhelpful since it contains only a definition for pharmacy: “The science and art of preserving drugs and of compounding and dispensing medicines according to prescriptions of physicians.”

. Plaintiff explained that through her medical insurance program she was able to obtain certain medicines, such as Tylenol, castor oil and calcium pills, at a substantially discounted rate if she did so with a physician’s prescription rather than purchase the same items over-the-counter.

. At the time the separation agreement was entered into, items such as Sudafed, Chlortrimatron and Benadryl were only available by prescription. Subsequently, they are now available without a prescription.

. Zantac 300mg. for example is only available by prescription while Zantac 75mg. is an over-the-counter drug.

. Whether or not plaintiff has actually paid all of the bills is irrelevant since she is nevertheless liable therefor.